# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-16-231-M |
| JEFFERY JOAQUIN TOWNLEY, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant's Motion to Suppress Evidence Derived in Violation of the Constitution and Brief in Support, filed January 19, 2017. On January 27, 2017, the government responded. On February 2, 2017, the Court conducted a hearing on defendant's motion to suppress. At the hearing, Douglas Grady, Sargent with the Oklahoma City Police Department ("OCPD"), testified.[1] Based on the parties' submissions, and the evidence presented at the motion to suppress hearing, the Court makes its determination.

I. Factual Background[2]

On July 21, 2016, Sgt. Grady was patrolling the area of Southeast 15th and Philips in Oklahoma City, due to various street gangs that frequent the area. During his patrol, Sgt. Grady observed a white Kia, traveling westbound on SE 15th Street, with a cracked windshield and two black racing stripes that started on the hood of the vehicle and proceeded up over the roof and down the back bumper of the vehicle. Sgt. Grady testified that he observed that the left hand black racing stripe, closest to the driver's side, covered up the month decal on the vehicle's state

---

[1] The Court finds that Sgt. Grady is a credible witness.

[2] The factual background is based upon the evidence presented at the hearing, unless otherwise noted.

1

issued license plate, in violation of Oklahoma state law. Based on Sgt. Grady's observations, he proceeded to follow the vehicle. Sgt. Grady testified that while he could not confirm that the vehicle was traveling faster than 25 miles per hour, the posted speed limit, he had to travel faster than 25 miles per hour to catch up with the vehicle, and, based on this action, Sgt. Grady believed the vehicle was driving in excess of the speed limit. Due to the cracked windshield, the covered license plate, and excessive speed, Sgt. Grady proceeded to effectuate a stop of the vehicle.

As Sgt. Grady initiated his emergency lights, he observed the vehicle turning into a private driveway.[3,4] Sgt. Grady testified that as he pulled behind the vehicle, he observed defendant quickly exit the vehicle.[5] Sgt. Grady further testified that due to his experience and training, defendant's behavior of driving in excess of the speed limit (possibly evading law enforcement) and quickly exiting the vehicle raised his suspicions that illegal contraband could possibly be in the vehicle. Sgt. Grady testified he approached defendant and handcuffed him for officer safety due to defendant's height and size compared to him, coupled with defendant's behavior.

After handcuffing defendant, Sgt. Grady proceeded to conduct a cursory pat frisk of defendant and felt a plastic baggie in defendant's right jeans pocket. Sgt. Grady testified that he asked defendant if he had any illegal contraband in his possession. Defendant responded that he

---

[3] Sgt. Grady testified that he initially advised dispatch that he was in pursuit of a vehicle and again as to the location of the stop and the vehicle tag; however, while the radio transmission of his pursuit was received, the radio transmission during the effectuation of the stop was not received.

[4] Sgt. Grady further testified that he was alone during the effectuation of the stop.

[5] Sgt. Grady testified that he asked defendant what he was doing at the location, and defendant said that he was visiting a friend, to which a person standing in the yard of the location at the time did confirm they knew defendant.

was in possession of Xanax. Sgt. Grady removed the Xanax pills from defendant's pocket and arrested defendant for possession of a controlled and dangerous substance without a prescription. During the seizure of the Xanax, Sgt. Grady's supervisor Lt. Robert Coniglione, of the OCPD, arrived on the scene.[6] Sgt. Grady reported to Lt. Coniglione that he had conducted a traffic stop and recovered Xanax from defendant. At that time, Lt. Coniglione proceeded to search the vehicle based on probable cause of finding Xanax on defendant.[7] While Lt. Coniglione searched the vehicle, Sgt. Grady ran a criminal history background check on defendant and learned that defendant's driving privileges had been suspended and that the vehicle's license plate and VIN number had been reported stolen.[8] During the search of the vehicle, Lt. Coniglione observed a sawed off shot gun on the driver's side floorboard in plain view.

II.     Discussion

Defendant contends that the traffic stop was pretextual, as there was no legitimate basis to effectuate a traffic stop. As a result, defendant asserts that any fruits produced as a result of the traffic stop should be suppressed. "To suppress evidence as the fruit of his unlawful detention, [a defendant] must make two showings: (1) that the detention did violate his Fourth Amendment rights; and (2) that there is a factual nexus between the illegality and the challenged evidence." *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) (internal quotations and citations

---

[6] Sgt. Grady testified that based on his radio dispatch that he was in pursuit of a vehicle, prior to the stop, he was located by Lt. Coniglione through the GPS monitoring in his patrol car.

[7] Sgt. Grady testified that defendant initially gave consent to search the vehicle and subsequently rescinded the consent, because defendant did not feel comfortable giving consent because the vehicle was not his.

[8] Sgt. Grady further testified that driving with a suspended license, unauthorized use of a motor vehicle, and being in possession of a stolen tag were also arrestable offenses that would have warranted a search of the vehicle incident to the arrest in order to do a custodial inventory of the vehicle prior to impoundment.

omitted). "Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not 'fruit of the poisonous tree,' either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id.* (internal quotations and citations omitted).

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* "The investigative detention usually must last no longer than is necessary to effectuate the purpose of the stop and the scope of the detention must be carefully tailored to its underlying justification." *Id.* at 1349.

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted).

Having heard the evidence at the hearing, and reviewed the parties' submissions, the Court finds that the traffic stop was lawful and did not violate defendant's Fourth Amendment

4

rights, and, therefore, the fruits produced as a result of the traffic stop should not be suppressed. Specifically, under Oklahoma law, "it shall be unlawful for any person . . . to operate a vehicle without proper license plate or decal or on which all taxes due the state have not been paid." Okla. Stat. tit. 47, § 1151(A)(5). Further, pursuant to the Oklahoma City Municipal Code Section 32-169,

> Subject to the other provisions of this article, where official signs and markings give notice of maximum or minimum speed limits in effect on any street, no vehicle shall be driven at rates in excess of the maximum nor slower than the minimum except as required by an authorized officer or in obedience to posted official signs.

Okla. City, Ordinances ch. 32, art. VI § 169. Sgt. Grady testified that he initially observed that the month decal on the license plate of the vehicle that defendant was driving was obstructed by the black racing stripe on the vehicle. Further, Sgt. Grady testified that based on his training and experience, he believed that defendant was driving in excess of the posted speed limit of 25 miles per hour. Therefore, the Court finds that based on the observed traffic and equipment violations, Sgt. Grady conducted a lawful and legitimate traffic stop when he pulled defendant over and, as such, defendant's motion to suppress should be denied.

III. Conclusion

Accordingly, for the reasons set forth above, the Court DENIES defendant's Motion to Suppress Evidence Derived in Violation of the Constitution and Brief in Support [docket no. 17].

**IT IS SO ORDERED this 3rd day of February, 2017.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

5